## SWAN v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted November 7, 1923. Decided December 3, 1923. Rehearing Denied December 21, 1923.)

### No. 3980.

1. **Arrest ⬳71—Property seized in connection with arrest not within constitutional protection.**

   Property seized in connection with a lawful arrest, which is held merely as evidence of crime, does not come within the protection of the constitutional provisions relating to search and seizure without a warrant.

2. **Gaming ⬳90(1)—Indictment for keeping gaming table held sufficient.**

   The fourth count of an indictment under Code, § 865, alleging the setting up of a gaming table and keeping it for the purpose of betting on the results of horse races, *held* sufficient to furnish defendant all the protection against further prosecution to which he is legally entitled, in view of section 868.

3. **Gaming ⬳97(2)—Admission of betting slips seized in defendant's place of business held not error.**

   The admission in evidence of betting slips seized in defendant's place of business and memoranda of betting transactions *held* not prejudicial error.

4. **Witnesses ⬳246(1)—Court's interrogation of reluctant witness held within its discretion.**

   Where the court's interrogation of a reluctant witness was conducted without prejudice to defendant, the court acted within its discretion.

5. **Gaming ⬳97(1)—Testimony that witnesses had gambled in defendant's place of business admissible.**

   The admission in evidence of testimony that witnesses had wagered on the results of horse races in defendant's place of business *held* not prejudicial error.

6. **Criminal law ⬳829(1)—Refusal of requested prayers embraced in charge not error.**

   Where all of the points set out in the prayers denied on which defendant was entitled to have the jury instructed were embraced in the charge, the denial was without error.

Appeal from the Supreme Court of the District of Columbia.

Charles T. Swan was convicted of setting up and keeping a table for the purpose of gaming, and he appeals. Affirmed.

James A. O'Shea, of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from a judgment of conviction in the Supreme Court of the District of Columbia of appellant, defendant below, upon an indictment in six counts. At the request of counsel for defendant, the court directed a verdict of not guilty on all the counts excepting the fourth, which charged as follows:

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That the said Charles T. Swan, on, to wit, the said first day of January, in the year of our Lord one thousand nine hundred and nineteen, and on divers other days and times between that day and the day of the finding of this indictment, and at the District of Columbia aforesaid, feloniously and unlawfully did set up and keep a certain gaming table for the purpose of gaming, that is to say, for the purpose of betting and wagering money and property upon the results of horse races, against the form of the statute in such case made and provided, and against the peace and government of the said United States."

It appears from the testimony that defendant conducted a cigar store in this city; that certain police officers, including one Lawrence Miller, in the month of April, 1920, visited the store and placed bets with defendant upon horse races; that upon this information a warrant was procured, charging defendant with betting and gaming with Miller; that defendant was arrested at his store and at the time of the arrest a large number of betting slips upon horse races were taken, among which was found the betting slips, including that of Miller, which were introduced in evidence at the trial; that there was also found on the premises about $24,000 in cash, in which defendant stated at the time of the arrest, would be found two $1 bills given to him by Miller. A number of other witnesses testified to the wager of bets on horse races with defendant, and identified, among the slips seized, slips made on those occasions.

[1] Defendant petitioned the court below for an order directing the return to him of the papers taken from his place of business by the police officers at the time of his arrest. The petition was denied, and upon this ruling error is assigned. The papers in question were evidence of crime, and were taken from the premises of the defendant at the time of his arrest and held for evidential purposes. Property seized in connection with a lawful arrest, and which is held merely as evidence of crime, does not come within the protection of the provisions of the Constitution prohibiting search and seizure without a search warrant. United States v. Mills (C. C.) 185 Fed. 318; United States v. Kraus (D. C.) 270 Fed. 578; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. In the Weeks Case the court had under consideration an unlawful search and seizure of documents, subsequently sought to be used against the defendant. The court, distinguishing the case from a proper seizure, speaking through Mr. Justice Day, said:

"What, then, is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. 1 Bishop on Criminal Procedure, art. 211; Wharton, Crim. Plead. and Practice (8th Ed.) art. 60; Dillon v. O'Brien and Davis, 16 Cox, C. C. 245. Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained, of which we shall have occasion to treat later in this opinion. Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused."

[2] It is claimed that the indictment failed to charge any offense. In disposing of this contention a number of assignments relating to the sufficiency of the indictment can be speedily disposed of. Count 4 of the indictment is laid under section 865 of the District of Columbia Code, which is as follows:

"Whoever shall in the District set, up or keep any gaming table, or any house, vessel, or place, on land or water, for the purpose of gaming, or gambling device commonly called ABC, faro bank, EO, roulette, equality, keno, thimble, or little joker, or any kind of gaming table or gambling device adapted, devised, and designed for the purpose of playing any game of chance for money or property, or shall induce, entice, and permit any person to bet or play at or upon any such gaming table or gambling device, or on the side of or against the keeper thereof, shall be punished by imprisonment for a term of not more than five years."

It is contended that count four when read in connection with the preceding counts of the indictment relates to bookmaking and not to the setting up or maintaining a gaming table. There is no merit in this contention for the reason that the fourth count makes no reference whatever to the previous counts, nor are any of the allegations of the preceding counts set out in the fourth count. The fourth count stands alone, and charges two things: Setting up a gaming table and keeping a gaming table for the purpose of betting on the results of horse races. The allegations of the indictment are sufficient to bring it within the purview of the statute. Section 868 of the Code defines a gaming table as follows:

"All games, devices, or contrivances at which money or any other thing shall be bet or wagered shall be deemed a gaming table within the meaning of these sections; and the courts shall construe the preceding sections liberally, so as to prevent the mischief intended to be guarded against."

This court in Miller v. United States, 6 App. D. C. 6, 12, construing the statutes relating to the setting up and maintaining of gaming tables, said:

"Any games, devices, or contrivances set up or kept for the purpose of gaming, or any gambling device, so set up and kept, adapted, devised and designed for the purpose of playing any game of chance for money or property, and to which the public may resort to bet or wager money, is a gaming table within the meaning of the statute. The definition of a gaming table under the statute does not involve the ordinary mechanical definition of a table, but depends for its statutory meaning upon the means or contrivances adopted for playing the game."

Interpreting these statutes, the court in Nelson v. United States, 28 App. D. C. 32, held a crap game to be within the purview of section 865 of the Code. Betting on horse races was likewise held to be punishable under the same section in Wade v. United States, 33 App. D. C. 29, 20 L. R. A. (N. S.) 347, 17 Ann. Cas. 707.

The indictment leaves no doubt as to the date or the continuance of the offense during and between the dates fixed therein. The indictment describes the gaming table set up as one for wagering and betting on the results of horse races and the proofs fully sustain the allegation. It is contended, however, that the indictment is insufficient in that defendant could not plead the judgment in this case as a bar to another indictment, charging him with setting up a gaming

table for the purpose of gaming in any of the respective games specifically named in section 865, supra. This may well be true, since defendant was not prosecuted in this case for any of those particular offenses. The judgment, however, would sufficiently operate as a bar to a prosecution charging defendant, during the times mentioned in this indictment, with setting up and keeping a gaming table at the place mentioned in the indictment for the purpose of betting and wagering money or property upon the results of horse races. This furnishes defendant all the protection against further prosecution to which he is legally entitled.

[3] A large number of assignments of error relate to the admission in evidence of the betting slips seized in defendant's place of business, as well as certain memoranda identified as memoranda of betting transactions; all of which, from a careful examination, we are convinced were admitted without error or prejudice to the rights of the defendant.

[4] The action of the court in interrogating the witness Porter regarding his wagering on the results of horse races in defendant's place of business is assigned as error. The record discloses that Porter was a reluctant witness, and the court acting within its discretion asked the witness certain questions for the purpose of ascertaining, if possible, what knowledge the witness possessed as to the matters under investigation. The questions asked were proper, and in asking them the court showed no hostility whatever toward the witness, nor betrayed any feeling from which the jury might even infer the view of the court respecting the guilt or innocence of the defendant. The manner in which the inquiry was conducted was entirely without prejudice to defendant, and the trial judge was acting clearly within his discretion.

[5] Numerous assignments of error are based upon the admission in evidence of the testimony of witnesses to the effect that they had wagered on the results of horse races in the defendant's place of business, as evidenced more fully by the identification of the slips which were seized and which related to and described the respective betting transactions. A careful examination of the various assignments fails, in our opinion, to disclose prejudicial error.

[6] Forty-one prayers were requested by counsel for defendant, of which 4 were granted, 9 were withdrawn, and 28 were denied. We have examined the prayers denied in the light of the charge of the court, and find that all of the points set out in the prayers, on which defendant was entitled to have the jury instructed, were clearly embraced in the charge of the court. The denial was therefore without error.

The judgment is affirmed.