## UNITED STATES v. GROSS et al.
### No. 6794.

Circuit Court of Appeals, Seventh Circuit.
April 1, 1939.

---

[14] Dobie on Federal Procedure, p. 323.

Joseph R. Roach and A. E. Roth, both of Chicago, Ill., for appellants.

Daniel D. Glasser and William J. Campbell, both of Chicago, Ill., for the United States.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

The appellants and John Vanco were jointly indicted by a Federal Grand Jury on four separate counts. The first count charged them with feloniously carrying on the business of a wholesale liquor dealer without having paid the special tax required by law. The second count charged them with having feloniously transported through the streets of the city of Chicago, 130 gallons of alcohol, in containers which did not have affixed to them stamps denoting the quantity of distilled spirits contained therein, and evidencing payment of all Internal Revenue taxes imposed upon such spirits as required by law. The third count charged them with removing, depositing and concealing alcohol in respect of which a tax was then and there imposed, with intent to defraud the United States of such tax. The fourth count charged the defendants with a conspiracy to commit the offenses set forth in the preceding counts.

To each count of this indictment the defendants entered a plea of not guilty, and on October 31, 1938, a jury was empaneled to try the cause. On the same day Vanco, by leave of court, withdrew his plea of not guilty and entered a plea of guilty, whereupon the trial proceeded. At the close of the Government's evidence each appellant filed a motion for directed verdict. This was renewed at the close of all the evidence and was denied. The jury returned a verdict of guilty as charged in the indictment. Judgment was entered on the verdict, and from that judgment this appeal is prosecuted.

Appellants have not complied with paragraph 5 of rule 22 of this court by setting forth the contested issues, but in the body of their brief they state that they rely upon the following alleged errors: (1). The cross-examination of the defendants and a witness presented by them; (2) the ruling of the court in admitting evidence of unrelated felonies; and (3) the ruling of the court in admitting in evidence an alleged confession of the appellant Nolan.

The record substantially supports the following facts: Armstrong and Linder were investigators for the Government. On November 22, 1937, they went to the vicinity of Ashland Avenue and Seventeenth Street, where they smelled the fumes of mash emanating from 1540 West Seventeenth Street. They thereupon stationed themselves in a building near the one from which the odors emanated. They heard men working in that building and located themselves on the first floor of a building directly opposite a garage door in the rear of the suspected building. At about nine-fifty P. M. they heard the start of a motor, the doors of the garage opened, and a Ford car backed out of the garage. The defendant Vanco was at the wheel of the car and there were two other men inside the garage. They closed the doors as Vanco "cleared" to drive away. Linder afterwards identified Gross as one of the other men, but Armstrong identified no one but Vanco. As the car drove away it appeared to be heavily loaded. Armstrong and Linder thereupon drove their car to Fourteenth and Halsted Streets where they found the Ford car which had backed out of the garage. They approached it and smelled the fumes of alcohol. One of them set his foot on the bumper, and was convinced by the reaction of the springs that it was heavily loaded, and he also saw the shape of five-gallon cans under an old cloth that was back of the front seats. Shortly thereafter Vanco left a tavern at the corner of Fourteenth and Halsted Streets, cleaned the windows of his car, and returned to the tavern. Shortly afterwards appellants and Vanco came out of the tavern, got into the Ford car and drove away. Armstrong and Linder followed the Ford and stopped it a short distance from the tavern. Nolan was then driving the car, and upon being stopped he stepped out of the car with his police badge in his hands and said to Armstrong and Linder: "I am a police officer of the city of Chicago. What is the idea of stopping us?" Armstrong said: "Well, anybody can have a badge like that. How many cans have you got in there?" Nolan then got into the front seat of the investigators' car and said: "Can't you give a fellow a pass? I am a police officer and I think you ought to give me a pass." Armstrong replied: "Why?" To which Nolan answered: "In the first place the two boys here with me

has nothing to do with this load. You can let them go. They don't know a thing about it. I picked them up on Halsted. They wanted a ride home and the load belongs to me." In the meantime Linder had driven the carload of alcohol to the Union Station Motor Garage. It had twenty-six five-gallon cans of untaxpaid alcohol in it.

Armstrong called Assistant United States Attorney Glasser by telephone and then took Nolan to Glasser's home. Glasser instructed Nolan that he was an Assistant United States District Attorney, and that any information he gave or any statements he might make might be used either for or against him; that he was under no orders to make a statement in regard to the offenses, but that if he wanted to help himself he could do so by telling Glasser where the alcohol came from. This Nolan refused to do as he did not care to involve the people from whom he got the alcohol. He refused Glasser's permission to call his captain or his supervising captain. He stated that this was the fifth load of alcohol that he had purchased, paying $9.00 for each five-gallon can; that he was selling it for $9.50, and that he was taking this load to Thirty-first and Halsted Streets. The building from which the odors of mash were emanating did not have a sign on or about it with the words: "Registered Distillery." It was stipulated at the trial that the automobile seized on the night in question contained twenty-six five-gallon cans of untaxpaid alcohol; that it was 180 proof, and that the Government tax would be $3.60 per gallon; that neither of the defendants had issued to him a wholesale liquor dealer's stamp at the time of the violation charged in the first count.

■ It is first contended by appellants that the court in its cross-examination of Nolan and another witness went beyond the scope of the direct examination, thereby preventing appellants from having a fair trial. There is no doubt that the trial court has a right to examine the parties as well as witnesses, and we agree with appellants that in doing so the court should be calmly judicial, dispassionate and impartial. United States v. Breen, 2 Cir., 96 F. 2d 782. It would serve no good purpose to set forth in detail the court's cross-examination complained of. It is quite true that many of the court's questions were collateral to the main question involved. For this reason these witnesses could not be impeached with respect to their answers.

It must be remembered that when a party or a witness takes the stand he takes his character with him, and he may be questioned as to collateral matters in so far as the answers thereto may reflect upon his character as a witness. A perusal of this record convinces us that the court did not abuse its discretion, and that the answers given to the questions could not have prejudiced the jury in any way. What we have said in this respect applies also to the District Attorney's cross-examination of the defendant, Gross.

■ It is further contended that the court erred in admitting evidence tending to show other unrelated offenses, that is to say, the unlawful operation of a distillery; maintenance therein of contraband alcohol; and other offenses involved in that situation. The evidence thus objected to referred to facts ascertained with reference to the building from which the alcoholic fumes were emanating, and from which the Ford automobile started. It is obvious that these facts were quite closely related to the charge under the first count of the indictment, and were properly admitted. It is urged, however, by appellants that there is no substantial evidence connecting either Gross or Nolan with those alleged unrelated offenses. With this contention we cannot agree. There is substantial evidence of one of the investigators that Gross was at the building when Vanco drove the Ford away. It is quite true that no one identified Nolan as one of the three parties then present, but his confession thereafter was substantial evidence from which the court could rightfully infer that he was present. This is further supported by Nolan's testimony in which he refused to divulge the name of the party from whom he received the alcohol; and by his further statement that neither Gross nor Vanco had anything to do with the affair and that he had just picked them up on Halsted Street in order to take them home. Furthermore, he was driving his car when he was arrested, and if he had merely picked them up for the purpose of taking them home he had obviously loaned the car to Gross and Vanco, for they had it in their possession when the government witnesses first saw them.

■ Here we have conflicting statements of Nolan, and the jury had a right to believe that which they deemed most worthy of credit. From all the facts and circumstances the jury quite evidently believed

**14**

that Nolan was the third party present when the automobile backed out of the garage. From these conflicting statements, together with Nolan's refusal to divulge the names of the operators of the plant, we think the jury was warranted in concluding that both appellants were guilty under the first count as well as under the other counts.

■ It is contended, however, by appellant Nolan that his confession was induced by a promise of reward and hope of immunity. A perusal of this record convinces us that there is no merit in this contention. The evidence was quite substantial to the contrary, and in view of the fact that Nolan was then a police officer, and had been for several years, we are unable to conceive that he was over-reached in this respect, and the evidence is quite positive that he was told that any statement he might make might be used for or against him.

Judgment affirmed.