## GRIFFIN v. UNITED STATES.
### No. 9542.

United States Court of Appeals
District of Columbia.

Argued Oct. 7, 1947.

Decided Dec. 8, 1947.

Mr. Robert I. Miller, of Washington, D. C., for appellant.

Mr. Sidney S. Sachs, Asst. U. S. Atty., of Washington, D. C., with whom Mr. George Morris Fay, U. S. Atty., and Mrs. Grace B. Stiles, Asst. U. S. Atty., both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON, and CLARK, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a judgment and conviction of appellant for first degree murder followed by a death sentence.

The testimony of all the witnesses, including appellant, was that a number of persons, among whom were included appellant, and the deceased, one Lee Hunter, had gathered in the apartment of one Lurline Bost at 1718 8th Street, Northwest, Washington, D. C., during the afternoon of February 8, 1947. Some of those present, including appellant and the deceased, were engaged in a gambling game called "blackjack", and there was considerable drinking of whiskey and beer. Five witnesses testified that the blackjack game had ended and that appellant began to play with Hunter's baby, that Hunter objected to appellant playing with the baby on the ground that he had been drinking, that appellant said, "If you don't want me to play with your baby, I will take your wife and baby around to my house," and that Hunter responded that if he did, he (Hunter) would kick his teeth down his throat. These five witnesses testified that appellant then withdrew from the apartment but returned in about ten or fifteen minutes with a pistol and immediately opened fire, killing Hunter with the first shot and firing three more shots in the general direction of other members of the party without hitting any one. The testimony was that during the firing he said: "Ain't nobody going to say they are going to kick my teeth down my throat and get away with it". Afterwards he retreated to the hallway, fired two more shots through the dor, and then ran out of the house.

Appellant took the stand in his own behalf. His version was that the blackjack game was still in progress, that he was banking it, that there were eight dollars in the pot, that Hunter won a dollar and demanded the whole pot, to which he objected. Hunter advanced upon him with the threat to kick his teeth down his throat. Also, that Hunter had his hand in his pocket and that appellant thereupon, being fortuitously in possession of a gun, shot and killed Hunter in self-defense. On cross-examination, appellant added the testimony that Hunter had threatened to kill him

Examined as to the other shots which he had fired at random, appellant pleaded forgetfulness and stated that he "must have got nervous."

Appellant takes no exception to the instructions of the court nor the admission and exclusion of evidence nor to any other incident of the trial except the action of the trial court in propounding questions to the defendant which appellant strenuously insists were prejudicial to appellant and beyond the authorized functions of the court.

After appellant had testified to his version of the killing, including his amended statement that deceased had threatened to kill him, the following colloquy ensued between him and the court:

"The Court. Before you said he threatened to kick your teeth out. The Witness. He did.

"The Court. You didn't say he threatened to kill you, did you? The Witness. After he said he would kick my teeth out, he said he would kill me.

"The Court. Why didn't you walk out of the apartment then? The Witness. He was coming toward me and it was a close, little apartment there and I couldn't get out."

It is upon the alleged impropriety of these questions by the court that appellant solely relies, his contention being that it was prejudicial for the trial court to question a witness, although his counsel had previously in this very case thanked the court for questions bringing out matter which counsel deemed to be beneficial to his client.

Appellant cites several cases in state courts wherein trial judges are criticized for interrogating witnesses. The only Federal case cited by appellant, Adler v. United States, 5 Cir., 182 F. 464, 472, is directly adverse to appellant's contention since, while it points out the necessity for impartiality on the part of the trial judge, it states explicitly that it is not only the right but the duty of the trial judge to participate directly in the trial, including the propounding of questions when it becomes essential to the development of the facts of the case.

■ In any event, the questions by the court and the answers of appellant should not possibly be held prejudicial to appellant for by the interchange he was enabled to make a logical answer explaining his conduct, entirely consistent with his theory of self-defense. So far from being prejudicial it was distinctly beneficial.

■ Whatever may be the law as to the right of a trial judge to examine the witnesses in the few state jurisdictions which appellant has cited in his brief, few rules are better settled, so far as the federal courts are concerned, than the right of a trial judge to make proper inquiry of any witness when he deems that the end of justice may be served thereby and for the purpose of making the case clear to the jurors.

Mr. Chief Justice Hughes, in Herron v. Southern Pacific Co., 283 U.S. 91, at page 95, 51 S.Ct. 383, at page 384, 75 L. Ed. 857, stated: "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. This discharge of the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides." While this was not a case concerning the examination of a witness by the court the language of Chief Justice Hughes was later quoted with approval by the Supreme Court in the case of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, wherein it was held that a district judge conducting a jury in a criminal case has a sound discretion to interrogate witnesses. Mr. Justice Murphy, delivering the opinion of the Court, further said: "The court did interrogate several witnesses, but in the main such interrogation was within its power to elicit the truth by an examination of the witnesses. United States v. Gross, 7 Cir., 103 F.2d 11; United States v. Breen, 2 Cir., 96 F.2d 782." 315 U.S. 82, 62 S.Ct. 470, 86 L.Ed. 680.

In Simon v. United States, 4 Cir., 123 F.2d 80, certiorari denied, 314 U.S. 694, 62 S.Ct. 412, 86 L.Ed. 555, Judge Dobie, speaking for the Circuit Court of Appeals, Fourth Circuit, said at page 83: "Appellant's counsel strenuously complains

that the trial judge questioned the witnesses from time to time in an effort to bring out the facts of the case. *This is precisely what he should have done.* It cannot be too often repeated, or too strongly emphasized, that the function of a federal trial judge is not that of an umpire or of a moderator at a town meeting. He sits to see that justice is done in the cases heard before him; and it is his duty to see that a case on trial is presented in such a way as to be understood by the jury, as well as by himself. *He should not hesitate to ask questions for the purpose of developing the facts;* and it is no ground of complaint that the facts so developed may hurt or help one side or the other. * * * The judge is the only disinterested lawyer connected with the proceeding. He has no interest except to see that justice is done, and he has no more important duty than to see that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury." [Italics supplied.]

So in Rudd v. United States, 8 Cir., 173 F. 912, we find this statement by Judge Hook of the Eighth Circuit Court of Appeals, at page 914: "A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done."

At this point it should be distinctly appropriate to note that Mr. Chief Justice Smyth said for this court as long ago as 1919 that it is a " * * * rule which prevails in Federal jurisdictions [that] the judge presiding at a trial 'has a right, and indeed, it is his duty, to see that the facts of the case are brought intelligibly to the attention of the jury, and to what extent he will intervene for this end *is a matter of discretion.*' " Budd v. United States, 48 App.D.C. 332, 336. [Italics supplied.] Cf. Swan v. United States, 54 App.D.C. 100, 295 F. 921. Also in United States v. Kay, 2 Cir., 101 F.2d 270, it was said, for the Second Circuit Court of Appeals, at page 272: "It is also assigned as error that the court unduly participated in examining the appellant and restricting counsel's time in summation. These are always matters to be disposed of by the exercise of a sound discretion in the course of a trial." And we may refer again to Glasser v. United States, supra, in this connection.

■ We find no abuse of discretion in the questioning conducted by the trial court in this case.

Many other federal cases might be cited to the same effect as those noted above.[1]

There can be no question about the rule as to the right and duty of a federal court making proper inquiries of witnesses in any kind of a trial in order that the jury may have a proper understanding of the case. Certainly there was nothing prejudicial in the questioning complained of by appellant in this case. It was a case of cold blooded murder proved by overwhelming evidence. The instructions of the court were proper, there was no error in admission and exclusion of evidence and the questioning by the court of the defendant upon the witness stand, so far from being prejudicial, was entirely beneficial rather than harmful in the result.

We felt constrained, by the nature of the case, to probe deeply into authority in determining the question raised on appeal. This we have done, and upon a careful examination of the record we find no error in it. The judgment is, therefore, affirmed.

Affirmed.

[1] Kettenbach v. United States, 9 Cir., 202 F. 377, certiorari denied, 229 U.S. 613, 33 S.Ct. 772, 57 L.Ed. 1352; Morrissey v. United States, 9 Cir., 67 F.2d 267, rehearing denied, 9 Cir., 70 F.2d 729, certiorari denied, 293 U.S. 566, 55 S.Ct. 77, 79 L.Ed. 666; Montrose Contracting Co. v. Westchester County, 2 Cir., 94 F.2d 580, certiorari denied, 304 U.S. 561, 58 S.Ct. 943, 82 L.Ed. 1529; United States v. Breen, 2 Cir., 96 F.2d 782, certiorari denied, 304 U.S. 585, 58 S.Ct. 1061, 82 L.Ed. 1546; United States v. Gross, 7 Cir., 103 F.2d 11; United States v. Lee, 7 Cir., 107 F.2d 522, certiorari denied, 309 U.S. 659, 60 S.Ct. 513, 84 L.Ed. 1008; National Mutual Casualty Co. v. Eisenhower, 10 Cir., 116 F.2d 891; Gomila v. United States, 5 Cir., 146 F.2d 372.