Terry B. WOMACK, Appellant,

v.

UNITED STATES, Appellee.

William H. LEWIS, Appellant,

v.

UNITED STATES, Appellee.

William S. WATERS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 8894, 8913 and 8914.

District of Columbia Court of Appeals.

Argued Oct. 7, 1975.

Decided Jan. 16, 1976.

Leroy Nesbitt, Washington, D.C., for appellant Womack.

Patrick J. Christmas, Washington, D.C., for appellants Lewis and Waters.

Henry H. Kennedy, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and C. Madison Brewer, Asst. U. S. Atty., were on the brief, for appellee.

Before KERN, NEBEKER and MACK, Associate Judges.

MACK, Associate Judge:

Appellants were Metropolitan Police officers when they were indicted for offenses growing out of an assault in which they allegedly participated while on off-duty status. After a jury trial, at which they elected not to offer testimony, appellant Womack was found guilty of aiding and abetting the commission of a simple assault[1] and obstruction of justice.[2] Appellant Lewis was convicted of two counts of simple assault[3] and appellant Waters was convicted of one count of simple assault.[4] From these judgments the defendants appeal. We affirm.

The government produced evidence showing that, on the evening of January 27, 1973, a black male, one Johnny L. Ervin, and a white female friend visited a restaurant-bar known to be a gathering place for off-duty policemen. In the early morning hours, as the two walked toward an exit, they heard racial remarks directed at them from a corner of the premises. Once outside, Mr. Ervin was accosted by two white males who proceeded to assault him. He managed to escape and sought refuge in the restaurant only to be set upon again, pushed into the street and beaten by his assailants.

Although neither Mr. Ervin nor his friend could identify his assailants, other witnesses identified appellants Lewis and Waters as taking part in the attacks. Appellant Womack was identified as the man who twice staved off the attention of an officer of the Executive Protective Service by identifying himself as a Metropolitan Police officer and stating that the Metropolitan Police were taking care of the matter. There was also evidence that appellant Womack took statements from witnesses which he threw away.

I

In this court appellants primarily assign error to the trial court's propounding of questions to two government witnesses.

It is beyond question that a court may interrogate a witness in the aid of

---

1. D.C.Code 1973, § 22–504.

2. D.C.Code 1973, § 22–703. The indictment's count against appellant Womack alleging accessory after the fact as to the assaults, in violation of D.C.Code 1973, § 4–176 was dismissed on Womack's motion at the end of the government's case. Prior to the trial the government dismissed the third count of the indictment which charged all three appellants with unnecessary or wanton severity to effect an arrest. Womack was sentenced to concurrent terms of ninety days for assault and eight to twenty-four months for obstruction of justice. Sentence was suspended and Womack was put on probation for two years.

3. D.C.Code 1973, § 22–504. Appellant Lewis was sentenced to one hundred and eighty days on each count, to run consecutively. One hundred and twenty of the three hundred and sixty day total was suspended, the remainder to be served outside of the District of Columbia.

4. D.C.Code 1973, § 22–504. At the close of the government's case, the court granted a judgment of acquittal as to one of two assault counts against appellant Waters. He was sentenced to one hundred and eighty days of which ninety were suspended, the remaining ninety to be served outside the District of Columbia.

truth and furtherance of justice (*United States v. Barbour*, 137 U.S.App.D.C. 116, 420 F.2d 1319 (1969); *Gomila v. United States*, 146 F.2d 372 (5th Cir. 1955)), and it is not only the right but the duty of the trial judge to participate directly in the trial, including the propounding of questions when it becomes essential to the development of the facts of the case. *Griffin v. United States*, 83 U.S.App.D.C. 20, 21, 164 F.2d 903, 904 (1947), *cert. denied*, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948). *See also Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942); *Billeci v. United States*, 87 U.S.App.D.C. 274, 184 F.2d 394 (1950); *United States v. Liddy*, 166 U.S.App.D.C. 95, 509 F.2d 428 (1974). To what extent the court will intervene for this purpose is a matter of discretion. *Griffin, supra*, 83 U.S.App. D.C. at 22, 164 F.2d at 905. In surveying the record here we find no abuse of such discretion.

■ Out of a trial that lasted six days and in which eleven witnesses were heard, the two instances of questioning that appellants cite are the only two such instances to be found in the record. On one occasion the court asked the government witness—an on-duty officer called to the scene of the crime—to state his reason for concluding, upon his arrival after the fact, that there had been no assault. When the officer answered that before he could conclude that there had been an assault he must have seen "bruises or injuries," the court sought to elicit the officer's definition of assault. This line of inquiry was directed solely to what the officer's understanding of the law was, and not to what he saw or heard. It could not have been prejudicial to appellants. *See Glasser, supra*, 315 U.S. at 83, 62 S.Ct. 457; *Hazel v. United States*, D.C.App., 319 A.2d 136 (1974).[5]

On the other occasion the court sought to inquire behind the conclusory statement of the police lieutenant who investigated the alleged crime, that appellant Womack, who did not pass on his notes of interviews with eyewitnesses to the lieutenant-supervisor, did not impede but actually aided his investigations. In view of this rather unusual testimony, the court sought to clarify its meaning. That the inquiry continued was due in large measure to the fervor of counsel who obviously was not thrown off balance in the conduct and prosecution of the theory of his case. *Cf. Williams v. United States*, D.C.App., 228 A.2d 846 (1967). This did not deprive appellants of a fair trial.

■ A criminal trial is not a game but "a quest for truth". *Gregory v. United States*, 125 U.S.App.D.C. 140, 143, 369 F.2d 185, 188 (1966). The drawing of conclusions was a matter for the jury and the trial court properly acted to see that this was understood. In its final instructions it repeatedly told the jurors that they were the judges of the facts and the credibility of witnesses and that any comments of the court on the evidence were not binding.

## II

■ Appellants' only other assignment of error is that the trial court did not grant their motions for judgment of acquittal at the close of the government's case. The appellants correctly state the *Hopkins v. United States*, D.C.App., 274 A.2d 418, 420 (1971), standard to be applied by the trial court in ruling on such a motion as:

"[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion [for judgment of acquittal] must be

5. It is clear that the trial court thought that some of the officers before him, including this witness—an experienced police officer who testified that an assault to him meant "shooting or cutting"—were trying to help the defendants. His justifiable concern, however, was expressed at a bench conference outside the hearing of the jury.

granted." [Citations and footnote omitted].

*See also Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967).

In the case at bar there was ample evidence that could have led a jury to the conclusion that it reached.

The evidence showed that just prior to the first assault the victim had heard racial taunts in the restaurant that precipitated a complaint by him to an employee. A woman patron, from whom Ervin's white friend sought help, identified appellant Lewis as a man she had spoken to earlier in the restaurant and as the perpetrator in the first assault. As to the continuing assault, a fellow officer testified that while he held Ervin on the ground, appellants Lewis and Waters approached and while he could not see what they were doing, he could "feel punches being thrown." An officer of the Executive Protective Service testified that just as the fleeing Ervin reached him, Ervin was grabbed from behind, dragged and beaten at a time when appellant Womack was assuring him for the second time that there was no need for his services. Two witnesses to the affray testified that they were driven by Womack to the police station and gave statements to him in the car —statements which were never submitted to his superior inside the station.

This evidence must be viewed in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact. *Crawford v. United States, supra; Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229 (1947). "It is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury." *United States v. Lumpkin,* 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971).

On this record a reasonable person could fairly conclude beyond a reasonable doubt from the evidence, and the inferences to be drawn therefrom, that appellants Lewis and Waters were in fact assaulting Ervin with criminal intent and not attempting an arrest.[6] It is also reasonable to conclude that Womack, in discouraging attention from other police sources, including his own investigating supervisor, knew this and was not only facilitating the crime (*Quarles v. United States,* D.C.App., 308 A.2d 773 (1973)) but obstructing communication of information with respect to such crime. *See United States v. Moore,* 140 U.S.App.D.C. 309, 311, 435 F.2d 113, 115 (1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 647 (1971). The motions for judgment of acquittal were properly denied.

*Affirmed.*

---

6. While the arguments of counsel do not appear in the transcript of proceedings, the court's instructions indicate that the defense strategy was to argue lack of reliable identification and/or that the officers could reasonably believe they were assisting in an arrest.