UNITED STATES of America, Appellee,

v.

Gary Gust HAUCK, Appellant.

No. 78–1544.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1978.

Decided Nov. 22, 1978.

Rehearing Denied Dec. 18, 1978.

William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for appellant.

Robert D. Hiaring, U. S. Atty., Sioux Falls, S. D., for appellee.

Before ROSS and McMILLIAN, Circuit Judges, and LARSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

The defendant appeals from a jury verdict finding him guilty of mailing a threatening communication in violation of 18 U.S.C. § 876. He was sentenced to a four-year term of imprisonment.[1] For reversal the defendant argues: statements obtained from him during an interview with FBI agents are inadmissible because he did not knowingly and intelligently waive his right to counsel; the trial court's examination of the government's expert witness exceeded the bounds of judicial propriety; and the court improperly admitted evidence of the defendant's previous charge of mailing threatening communications. For the following reasons, we affirm the District Court.[2]

On March 8, 1978, Judge Mary Dell Cody, a South Dakota Magistrate Judge, who as states attorney had previously prosecuted the defendant for larceny, received a letter from the defendant saying that he hated her and was going to kill her. The letter was signed by the defendant[3] and bore his correct address at the Human Services Center, where he was then incarcerated.

About three weeks after Judge Cody received the letter in the mail and two days before the defendant was indicted, FBI Agent Leon Cantin interviewed the defendant for approximately one hour at the Human Services Center. The defendant's first argument for reversal arises out of this interview.

Agent Cantin testified that he initially identified himself and gave the defendant his *Miranda* rights. Approximately twenty to thirty minutes later, when Agent Cantin asked the defendant for handwriting exemplars, the defendant requested assistance of counsel and inquired as to where counsel would come from. Cantin explained that, because the federal judge was in Sioux Falls, the attorney appointed would probably be from Sioux Falls and the defendant might have to stay overnight at one of two Sioux Falls prisons to confer with his counsel. The defendant then said retaining an attorney seemed like too much trouble and proceeded with the interview. Soon thereafter he admitted to writing the threatening letter. The defendant argues that Agent Cantin knew he had experienced trouble at the two incarceration facilities in Sioux Falls and had been placed in the Human Services Center for safekeeping. According to the defendant, telling him he must return to one of these facilities to obtain counsel coerced him into abandoning his desire for assistance of counsel.

The appellant relies on two cases to support his argument that he involuntarily waived his right to counsel: *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977) and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We find that neither compels the result urged by the defendant.

---

* The Honorable Earl R. Larson, Senior District Judge for the District of Minnesota, sitting by designation.

1. This sentence is to run concurrently with the state sentence the defendant is presently serving at the Human Services Center, an adjunct of the South Dakota state penitentiary. If the defendant is released from the state penitentiary before the four years, he is to be assigned for the remainder of his term to a federal facility where he can receive psychological and psychiatric counseling.

2. The Honorable Fred J. Nichol, United States Chief Judge for the District of South Dakota.

3. The letter was also signed by Mark Behring, but the defendant admitted that he signed Behring's name.

■ Although the Court in *Miranda* stated that questioning must stop once the right to counsel was invoked, it also stated that questioning could continue if the defendant thereafter specifically waived the right to counsel. *Miranda v. Arizona, supra*, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. The uncontradicted testimony of Agent Cantin showed that the defendant affirmatively withdrew his request for counsel before the interview continued.

The defendant also argues that he was the victim of the same type of subtle coercion that was condemned in *Brewer v. Williams, supra*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423. We cannot agree that the cases are comparable. In *Brewer* the defendant, who had been arrested, arraigned and jailed, was alone for three to four hours with police officers who were transporting him 160 miles. The officers had been told by the defendant's attorney not to question him and the defendant had been told by his attorney not to talk about the alleged murder. Despite the fact that the defendant was obviously dependent on his attorneys' advice, the officers refused to allow either of his attorneys to accompany them on the automobile trip. Throughout the trip the defendant consistently exhibited his desire not to talk without counsel by stating that he would tell the full story in Des Moines (where he would be reunited with his second attorney). Nevertheless, one of the officers intentionally exploited what he knew to be the defendant's unstable mental state and deeply religious convictions to persuade him to give incriminating statements.

■ The facts of *Brewer* cannot compare to the present case. Here the agent was providing relevant, accurate information solicited by the defendant; there had been no warning by counsel not to discuss the case with the defendant; and there was no intent on the part of the agent to circumvent such instructions. Lastly, Agent Cantin, rather than ignoring the defendant's request to talk later, acknowledged to the defendant that refraining to talk until counsel became available was his privilege. Merely explaining the procedures which must be followed to secure court-appointed counsel cannot be deemed coercion. We agree with the Fifth Circuit, which, in *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973), was presented with a similar situation. There, upon defendant Hodge's request for an attorney, the interrogating officer informed him of the procedure to obtain counsel. As did Hauck, Hodge changed his mind and, after affirmatively waiving his right to counsel, volunteered a statement. The court held that Hodge's statements were admissible because he intelligently and voluntarily waived his right to counsel.

In the case at bar we find no element of coercion in Agent Cantin's interview with the defendant and hold that the defendant's statements were voluntarily given and properly admitted by the District Court.

■ The second error claimed by the defendant is that, by questioning the government's expert witness, the court became an advocate. Dr. Bean, the psychiatrist called by the government to rebut the defendant's claim of insanity, was asked whether, in his opinion, the defendant could appreciate the wrongfulness of his conduct and could conform his conduct to the law.[4] The defendant claims that Dr. Bean's answer was ambiguous, and, because a clear answer to this question is crucial in determining sanity, the government did not present sufficient evidence to counter his defense. We do not agree that Dr. Bean's answer was ambiguous. The prosecutor properly asked the essential questions, and, while Dr. Bean's response did not parody the words of the question, it is clear that in his opinion the defendant knew what he

---

4. In *United States v. Frazier*, 458 F.2d 911 (8th Cir. 1972), this court adopted the ALI test for determining insanity. This test defines a defendant as insane if at the time of the alleged criminal conduct, "he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Id.* at 918, *citing* Model Penal Code § 401 (Final Draft 1962).

was doing and was able to control his actions. The trial court was not eliciting new testimony but was ensuring that Dr. Bean intended to answer this determinative question as he did. This court has on previous occasions discussed a trial court's duty to clarify testimony, even when the ultimate result is unfavorable to one party:

> The judge has a duty to comprehend what a witness says as much as it is his duty to see that the witness communicates with the jury in an intelligible manner. . . . Where the testimony is confusing or not altogether clear the alleged 'jeopardy' to one side caused by the clarification of a witness's statement is certainly outweighed by the desirability of factual understanding.

*Ray v. United States,* 367 F.2d 258, 261 (8th Cir. 1966), *cert. denied,* 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967). *See Glasser v. United States,* 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. McColgin,* 535 F.2d 471, 475 (8th Cir. 1976); *Batsell v. United States,* 217 F.2d 257, 262 (8th Cir. 1954). Here the judge did not engage in a persistent line of questioning but prefaced his sole question by expressing his reluctance to intercede and by offering the two attorneys an opportunity to object. Neither attorney objected. The defendant cannot sit idly by, hoping the answer to a judge's question will be in his favor and later, when it is apparent that it is not, object that the judge became an advocate. *See Griffin v. United States,* 83 U.S.App.D.C. 20, 21, 164 F.2d 903, 904 (1947).

The defendant's third allegation of error is that the trial court improperly admitted evidence of a previous charge filed against him for mailing threatening communications. Two witnesses—FBI Agent Cantin, who interviewed the defendant, and Gerald Douglas, Deputy U.S. Marshal in Sioux Falls, who transported the defendant several times—testified that Hauck told them that he beat a previous charge of sending a

threatening communication to a judge by pleading insanity and he would similarly beat this charge. The defendant argues that evidence of this prior charge should not have been admitted because it was prejudicial and would lead the jury to believe that, if he had mailed such letters before, he probably did so in this instance.

In analyzing this issue, this court must give great deference to the trial court. *United States v. Maestas,* 554 F.2d 834, 836 (8th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977); *United States v. Jardan,* 552 F.2d 216, 218 (8th Cir.), *cert. denied,* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977).

■ We find that, while evidence of past misconduct is usually inadmissible, the trial court properly admitted this evidence under Federal Rule of Evidence 404(b). Rule 404(b) provides that evidence of other crimes is not admissible to prove character but may be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We find that in this case the defendant's statements to Agent Cantin and Marshal Douglas were indicative of his intent [5] and motive for asserting the insanity defense. Once this defense was asserted by Hauck, the government was entitled to use evidence of past misconduct to rebut it. *Cf. United States v. Fink,* 502 F.2d 1, 5 (5th Cir. 1974), *rev'd on other grounds sub nom. Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (character evidence is admissible to rebut an entrapment defense); *United States v. Brown,* 453 F.2d 101, 108 (8th Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972) (other offenses could be shown to rebut an entrapment defense). We do not find that the defendant was unduly prejudiced by the admission of his previous charge of mailing a threatening communication. Because he admitted writing the communication to Judge Cody, the defendant's argument that the

---

**5.** We emphasize that the intent at issue here is not the intent necessary to violate 18 U.S.C. § 876 but instead is the general intent and motive of the defendant in asserting the insanity defense.

jury would be more likely to think he sent this communication because he was previously charged with the same thing is superfluous.

For the foregoing reasons, the judgment of the District Court is affirmed.