Harvey PETWAY, Appellant, a/k/a
George Patwell,

v.

UNITED STATES, Appellee.

No. 11972.

District of Columbia Court of Appeals.

Argued March 9, 1978.

Decided Sept. 8, 1978.

James L. Lyons, Washington, D. C., with whom Edwin A. Williams, Washington, D. C., was on brief, for appellant.

William J. Cassidy, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Donald L. Abrams, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and GALLAGHER, Associate Judges.

PER CURIAM:

The jury's conviction of appellant for carnal knowledge of and incest with his daughter has been put in jeopardy on this appeal because of the unwarranted and hence improper interjection of the trial judge throughout the trial and in particular during (a) the cross-examination of two key prosecution witnesses—the prosecutrix and her mother—and (b) the examination of a key defense alibi witness. Finding that the trial court's participation substantially prejudiced appellant's defense, we reverse.

■ We start with the basic governing principles enunciated some years ago by the United States Court of Appeals for the District of Columbia:

There are and can be no hard and fast rules as to how much questioning a judge may or should engage in because what would be appropriate in one setting would be otherwise in another. One obvious general rule is that, since the judge is something more than a moderator, but always a neutral umpire, the interrogation of witnesses is ordinarily best left to counsel, who presumably have an intimate familiarity with the case. A presiding judge can control the trial without participating actively in examination of witnesses. . . . [I]n a jury case, a trial judge should exercise restraint and caution because of the possible prejudicial consequences of the presider's intervention. . . . This risk [casting the judge, in the eyes of some jurors, on the side of the prosecution] is always present when a presiding judge undertakes to interrogate witnesses at length. If a trial judge has definite ideas as to what lines of inquiry ought to be pursued, he is free to call both counsel to the bench, or in chambers and suggest what he wants done. That the judge may be able to examine witnesses more skillfully or develop a point in less time than counsel requires does not ordinarily justify such participation. That is not his function.

[*Jackson v. United States*, 117 U.S.App. D.C. 325, 326, 329 F.2d 893, 894 (1964).]

The circuit court in 1969 further cautioned:

Interrogation of witnesses tends to assimilate the court's role with the advocate's, and may tread over the line separating the provinces of judge and jury. The presumption of innocence may be jeopardized by an assumption of guilt radiated by overzealous quizzing by the judge, and the right to fair trial may be imperiled by an apparent breach of the atmosphere of judicial evenhandedness that should pervade the courtroom. . . . There is also the danger that the judge may elicit from the witness responses hurtful to the accused—responses to which the jury may assign peculiar weight because of their ostensible judicial sponsorship. [*United States v. Barbour*, 137 U.S.App. D.C. 116, 118, 420 F.2d 1319, 1321 (1969) (footnotes omitted).]

Recently, that court has observed:

A . . . trial judge has inherent authority . . . in appropriate instances—to . . . question witnesses. He may do this when he believes the additional testimony will be helpful to the jurors in ascertaining the truth and discharging their fact-finding function. What is required, however, are reins of restraint, that he not comport himself in such a way as to "tilt" or oversteer the jury or control their deliberations. [*United States v. Liddy*, 166 U.S.App.D.C. 95, 105, 509 F.2d 428, 438 (1974) (footnotes omitted).]

It is in light of these principles that we examine the record in the instant case. We note that, in general, it is difficult to discern the tenor of a trial from the reporter's transcript. Nonetheless, we believe that recitation of a portion of the trial transcript relating to the interactions between the court and the prosecutor serves to place into a clearer prospective the court's later participation in the examination of the witnesses.

■ From the very outset of the trial the court arrogated to itself the prospective function by directing the prosecutor to "start objecting" in order to "save this

Court its time." (Record at 116.) When the Assistant United States Attorney protested, out of the presence of the jury, that he would object to testimony proffered into evidence only if *he* thought it objectionable (Record at 120–21), the court made clear that it would reprimand the prosecutor whenever *it* determined an objection to testimony was in order:

> THE COURT: No, sir. I'll tell you to object if I feel you should be on your feet. Now, if you have a personal complaint, so be it, but I continue and I will continue to reprimand you if you're sitting there and letting counsel state facts that are not in evidence. Now, if you're just going to be crying, you go ahead and cry, but you take your seat down there, sir.
>
> COUNSEL: I'm not crying. I've pointed out that I don't have an objection to these matters.
>
> THE COURT: I'm telling you that when there's one in law that should be raised, that fact that you don't want to does not suggest that I should sit here and let it go by.
>
> COUNSEL: I think the Court can object—
>
> THE COURT: Don't tell me what I can do. You just go down and try your case. That's it. [Record at 121].[1]

This course of intervention by the trial court continued during defense counsel's cross-examination of the prosecutrix. There were two bases from which the defenses sought to infer bias: influence by the mother over the daughter and dislike for the father. On direct examination, the prosecutrix had testified to actions by her father prior to the alleged rape that had upset her. (Record at 436–38.) On cross-examination, defense sought to ask in various ways the basic question of whether she had discussed "these things" with her mother (who was separated from the father and with whom the daughter was living at the time the crime allegedly occurred). After sustaining the prosecutor's continual objections to each such attempt, the court finally stated to defense counsel: "I'm trying to run an efficient time program here, counsel, so, please, don't repeat questions." (Record at 438.) The trial judge then further interrupted the cross-examination with the following remarks to the witness:

> Let me ask you this, let's get right down to the point: Are you saying everything you've said in front of this jury to get back at your father? [Record at 439.]

When the prosecutrix, predictably, answered the court's question in the negative, the court questioned her again (Record at 439–40):

> THE COURT: Are you saying any of this because your mother told you to blame your father?

> THE COURT: That's absolutely contemptuous on your part. It is. I daresay, and I don't know if you've ever practiced in the United States District Court, sir, but I'll tell you this: You would get hit with a hundred dollar fine just by stating that. I've ruled. I'm the ultimate arbiter here. I've made up my mind. I've made the decision. What you have to say is nothing more than contempt stated for the record. I've ruled on it, sir, and that's it. I'm satisfied that you haven't proven rape. You've proven a lot of things, but you have not proven rape.

Not only was the court's denial of the prosecutor's request to review the testimony and make a statement for the record improper but the court breached the duty of courtesy to counsel—prosecutor as well as defense attorney—which Chief Judge Cayton of this court pointed out was the obligation of all judges. *Williams v. United States*, D.C.App., 228 A.2d 846, 848 (1967).

---

1. We note a further episode involving the court and prosecutor. At the conclusion of all the evidence defense counsel moved to dismiss the charge of rape and the court commented (Record at 314): "She was raped forcibly here, but not out of fear for her life or bodily harm. The testimony never came in . . . .. They held her down. Her father hit her." When the prosecutor sought to "go over the testimony," the court refused, accusing "both of you [counsel] have misstated most of the testimony." (Record at 314–15.)

The court then granted the defense motion. When the prosecutor asked to be heard for the record, the following colloquy occurred (Record at 315):

> THE COURT: No sir, you're not to say anything for the record because that ends it.
> COUNSEL: This is a jury trial.
> THE COURT: That's right. That ends it. You can't go any higher.
> COUNSEL: May I—

WITNESS: No.

THE COURT: Did this actually happen to you according to what you've said?

WITNESS: Yes.

THE COURT: You're under oath. Do you understand that?

WITNESS: Yes.

THE COURT: All right. You did not make this up?

WITNESS: No.

THE COURT: All right.

There was a further instance of intervention by the trial judge during this important and delicate part of defense counsel's cross-examination of the prosecutrix. Appellant's attorney began to develop testimony concerning the fact that complainant went to live with her mother after the separation of her parents. He posed the question: "Weren't you having problems with your father at the time?" which drew an objection that the court sustained. Counsel then paused in his cross-examination. At this point, the court interceded "while counsel [was] thinking" with several questions, all of which involved essentially the same inquiry: whether the prosecutrix got along with her father prior to the date on which he allegedly raped her. Two of the court's questions examined whether she had anything against her father as a consequence of which she would make up the story of the alleged rape; these questions predictably, drew negative answers. (Record at 69–70.)

It is obvious that bias on the part of the complainant toward the defendant, her father, constituted the cornerstone of the defense case. Therefore it was imperative that the trial court act with restraint and afford defense counsel reasonable opportunity to proceed with his own development of this important and delicate line of inquiry rather than interjecting its own series of conclusory questions in the midst of cross-examination. The United States Court of Appeals for the District of Columbia Circuit has aptly stated:

"[W]e realize that an alert and capable judge at times feels that he can assist in developing the evidence by participating in the interrogation of witnesses," but, particularly with alternatives available, "he would ordinarily do well to forego such intrusion upon the functions of counsel, thus maintaining the court's position of impartiality, in the eyes of the ever-observant jurors." [*United States v. Barbour, supra* 137 U.S.App.D.C. at 119, 420 F.2d at 1322, *quoting United States v. Carmel*, 267 F.2d 345, 350 n.24 (7th Cir. 1959).]

Defense counsel had the right *himself* to examine the prosecutrix for a reasonable length of time in order to develop possible bias against her father without intervention by the court to ask in conclusory form questions going to the very heart of the bias issue he had been seeking to present in an orderly fashion for ultimate evaluation by the jury. This court has previously ruled that *the trial court may not require counsel to ask questions in conclusory form of a witness whom he is questioning in order to demonstrate bias. White v. United States*, D.C.App., 297 A.2d 766 (1972). There we said:

[T]he trial judge indicated that he would permit appellant's counsel to inquire directly of the witness—Are you testifying because you are prejudiced against defendant? However, to have to frame the question in direct and ultimate fashion would almost certainly have involved a negative answer from the witness. Furthermore, a question in such form and the answer it seeks to elicit renders the jury incapable of determining by deduction from facts presented, whether the testimony of a witness is a product of bias or prejudice and this impairs the function of the jury. . . . In short, the trial court's offer to counsel that he might ask the ultimate question, without allowing him the opportunity to ask any preliminary questions, constituted an improper limitation on appellant's right to cross-examine witnesses against him. [*Id.* at 768.]

We have previously stated that the trial court may not require counsel to ask questions on cross-examination in "di-

rect and ultimate fashion" aimed at demonstrating the bias of the witness. It is equally improper for the trial court to intervene into counsel's cross-examination and pose itself the questions in such conclusory form.[2]

The court's interposition into defense counsel's cross-examination of the mother of the prosecutrix (and estranged wife of appellant) equally demonstrated improper interference. Counsel questioned the witness as to why "she let her [daughter] walk that distance [to her aunt's house]" in the early morning of Sunday when the rape allegedly occurred. (Record at 84). The court refused to allow the witness to answer this question. Then, without warning, the court itself posed to the witness a series of questions about the complainant's condition when she left her mother's home as contrasted to her condition a few minutes later when she arrived at her aunt's home after the alleged rape. (Record at 84–85). The effect of the court's questions was to have repeated to the jury on cross-examination the very testimony which the witness had already presented on *direct* examination—testimony which went to matters irrelevant to defense counsel's line of questioning at the time. The court thereby reinforced in the minds of the jurors the testimony of the details of the prosecutrix's physical appearance after the alleged sexual assault.

The trial judge then interrogated the witness concerning possible bias toward appellant in a series of conclusory questions (Record at 85):

THE COURT: From your testimony it's obvious you didn't get along with your husband back in August, at least from last December back to August, is that right?

THE WITNESS: Yes.

THE COURT: Did you ever put the idea into Shirley's head to state to anybody that she was raped by her father?

THE WITNESS: No.

THE COURT: You never planted that seed in her mind to get even with your husband in any way?

THE WITNESS: No, I did not.

THE COURT: To your knowledge, did she have any grudge against her father that she would come into this court and testify against her father as to being raped by him?

THE WITNESS: No.

By its conduct during the defense cross-examination of this crucial prosecution witness, the court precluded the defense from developing by preliminary questions evidence from which the jury could infer bias on the witness' part, and repeated for the jury a description of condition of complainant after the alleged sexual assault.[3]

We next examine the trial court's interference with the testimony of the key defense alibi witness, appellant's brother. He had testified on direct examination that he began to paint the kitchen ceiling of appellant's house during the late night hours and was still painting in the early morning hours (at about the same time complainant alleged she had been raped) and that appellant was present in the house during that time period. This testimony supported appellant's denial of the crime charged. The prosecutor cross-examined this witness extensively concerning the painting, seeking to shake his testimony. After redirect examination by the defense, both counsel announced their examinations were complete. The trial court then resumed the questioning itself and asked the witness, among other things, about the number of coats of paint he had applied and the consistency of the particular paint-base he had used. (Record at 183.) Having elicited answers from the witness to these two questions, *viz.*, more than one coat of the oil-based

2. Given the obvious importance to the defense of the cross-examination of this witness, the court, if it deemed questions necessary, should have first consulted counsel before propounding them. *See Jackson v. United States, supra* 117 U.S.App.D.C. at 326, 329 F.2d at 894.

3. The suddenness with which the court undertook its questioning and the devastating effect of such questioning made useless any objection by counsel. *See United States v. Wyatt,* 143 U.S.App.D.C. 136, 139, 442 F.2d 858, 861 (1971).

paint had been applied, the court then posed the question (Record at 184):

> You know enough about paint to know that oil based paint doesn't dry that rapidly, don't you?

The court followed up the witness' answer with another question equally argumentative in nature. (Record at 184):

> You've painted enough to know that you can't roller or paint that paint over wet paint?

 We note that when the trial court propounded these questions there had been no ambiguity in the witness' testimony, and thus there was no pending factual issue which required clarification for the benefit of the jury. Nor was there "a patent omission" in the testimony which necessitated corrective action. In short, it was not "essential to the development of the case" for the court to conduct further cross-examination of the alibi witness. *See Womack v. United States*, D.C.App., 350 A.2d 381, 383 (1976); *Perry v. United States*, D.C.App., 364 A.2d 617, 620 (1976).[4]

We conclude our opinion with a reference to *Jackson v. United States, supra* 117 U.S. App.D.C. at 325–26, 329 F.2d at 893–94:

> [T]here is no way to evaluate . . . claims of undue and prejudicial intervention except by an examination of the entire transcript of the trial, which we have done, in order to be sure that we "guard against the magnification on appeal of instances which were of little importance in their setting." . . .

> At best it is difficult on appellate review to appraise the impact of intervention by the presiding judge and determine whether his participation exceeded permissible bounds. . . . In this case the responses elicited by the judge were largely adverse to appellant. In itself this does not render the judicial intervention impermissible but in it were the seeds of tilting the balance against the accused and casting the judge, in the eyes of some jurors, on the side of the prosecution. This risk is always present when a presiding judge undertakes to interrogate witnesses at length. . . .

> On the whole record we cannot say, with that degree of assurance required in a criminal case, that the activities of the trial judge may not have prejudiced the defendant, notwithstanding the strong evidence presented against him. . . .

We are mindful of the Supreme Court's admonition to guard against magnifying out of proportion instances occurring at trial which had "little importance in their setting." *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Nevertheless, we conclude upon review of the record that the trial court's interference with the cross-examination of the government's key witnesses and the court's assimilation of the prosecution role was so substantial that appellant's defense was prejudiced.

In sum, the trial court loosed the reins of restraint it must hold on itself and thereby has undone the jury's work and necessitated a new trial of the charges against appellant.

*Reversed and remanded for new trial.*

---

4. The government suggests that the court's intervention was not prejudicial because almost immediately thereafter the court stated to the jury (Record at 187–88): "I ask questions not for my benefit, not to take [defense counsel's] place or [prosecutor's] place as the prosecutor. I ask questions for your benefit, your benefit alone." The court cannot abandon its proper judicial function to play the role of prosecutor in the eyes of the jury, and then expect to justify this derogation of appropriate procedure in the name of and for the benefit of the jury.