**Charles W. ROBINSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–852.

District of Columbia Court of Appeals.

Argued March 20, 1986.
Decided July 30, 1986.

---

M. Elizabeth Kent, Washington, D.C., appointed by this court, for appellant.

Joseph E. diGenova, U.S. Atty. and Michael W. Farrell and Robert Carson Godbey, Asst. U.S. Attys., Washington, D.C., submitted on brief for appellee.

Before FERREN, TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of distribution of dilaudid[1] and possession of dilaudid.[2] On appeal he challenges only the distribution conviction. Appellant contends that the trial court erred in refusing to restrict, in advance, the government's cross-examination of a defense witness, and that the court abridged his right to a fair trial by arrogating the prosecutorial function to itself, interfering with defense counsel's examination of witnesses, and manifesting hostility to the defense. We find no reversible error and affirm the conviction.

I

On the evening of December 7, 1982, Officer Robert Moroney, an undercover narcotics officer, went to the area of 12th and N Streets, N.W. There he was approached by Larry Hodge, who asked if he could "serve" Moroney. After a brief conversation, the two men agreed on a sale of dilaudid. Together they walked to the corner of 11th and N Streets, where Hodge told Moroney to wait. Hodge crossed the street and spoke to another man—appellant—who appeared to hand Hodge something. Hodge and appellant then came back across the street, and Hodge gave Moroney a dilaudid pill wrapped in aluminum foil. At this point appellant was about two feet from Moroney, standing almost directly under a street lamp, and Moroney could see him clearly. As Moroney was preparing to pay Hodge for the pill, appellant warned Hodge that Moroney looked like the police and that he should not sell to him. Nevertheless, the sale was completed, and Moroney left. A few min-

---

1. D.C.Code § 33–541(a)(1) (1985 Supp.).

2. D.C.Code § 33–541(d) (1985 Supp.).

utes later, after Moroney had broadcast a description of the two men, Hodge was arrested by other officers. Moroney drove past the scene of the arrest and identified him. Another officer detained a man thought to be the holder of the drugs, but after Moroney drove by and informed the officer by radio that this man was not the holder, he was released.

Two days later, on December 9, Officer Moroney returned to the same area to make another undercover buy. He was accompanied this time by another officer, Vincent Pugliese. When Allen Cunningham approached and offered his services, Pugliese told Cunningham that he and Moroney would like to buy some dilaudid. Cunningham walked across the street and approached appellant, whom Moroney immediately recognized as the man he had seen on December 7. Moroney turned away so that appellant would not recognize him. Cunningham then returned and handed Pugliese a foil packet containing two dilaudid pills; the officers in turn gave Cunningham $60 in bills whose serial numbers had been pre-recorded. Pugliese and Moroney left the area and broadcast descriptions of both men, and soon thereafter appellant and Cunningham were placed under arrest.[3] Moroney and Pugliese made a ride-by identification of both suspects. Moroney also identified appellant in court. Pugliese, however, was not asked to make an in-court identification, and he admitted on cross-examination that he had not been able to identify appellant in court at an earlier hearing.

Appellant's defense was misidentification. Hodge and Cunningham, his former co-defendants,[4] admitted in their testimony that they had sold drugs on December 7 and 9, respectively, but both of them said that appellant was not the other man involved in the sales.[5] Both men were impeached by prior drug convictions. The manager of a tourist home testified that appellant and his girl friend had been registered guests at his establishment from December 6 through December 10.

The jury found appellant guilty of distribution of dilaudid on December 7 and possession of dilaudid on December 9. It acquitted him of the charge of distribution on December 9.

## II

On the second day of trial, defense counsel asked the court to make an *in limine* ruling restricting the government's cross-examination of a proposed defense witness, Linda Koonce, appellant's girl friend. Counsel proffered that Koonce would testify that she had been staying with appellant at the tourist home on December 7 and that they were still in their room when Hodge sold dilaudid to Officer Moroney. Furthermore, since she was not absolutely sure about the time, she would also describe the clothing appellant was wearing that evening, which was different from Moroney's description of the clothing worn by Hodge's confederate.

Counsel anticipated that on cross-examination the government would ask how Koonce remembered what appellant was wearing. Her response would be that appellant had been released from jail on December 6 on a charge that was subsequently dropped and had not changed his clothes overnight. Defense counsel feared that such testimony would be prejudicial and

---

3. When Cunningham was arrested, he had in his possession four one-dollar bills whose serial numbers were among those recorded by Officer Moroney. When appellant was arrested, the arresting officers saw him put something in his mouth. They made him spit it out and found that it was an aluminum foil packet containing two dilaudid pills. These pills were the basis of the possession conviction, which appellant does not contest.

4. The charges against Hodge and Cunningham had been resolved before trial by plea bargains.

5. Hodge said that he had received the drugs on December 7 from a man known as "Big Butt Ronnie." Cunningham said that he and another man named Ronnie (apparently not Big Butt Ronnie) had approached Moroney and Pugliese on December 9, and that they had both crossed the street to obtain the two dilaudid tablets from another man, who was not appellant.

asked the court to prohibit the government from asking a question that would elicit such an answer from the witness. The court refused to rule until the government had actually begun its cross-examination. It expressed the tentative view that the government had "a right to ventilate these issues," but it agreed to bar any questioning about why appellant was in jail, how long he had been there, or whether he had been in jail on other occasions. The court also said that defense counsel could show that the charges against appellant had ultimately been dismissed, and suggested that the government might even stipulate to that. Defense counsel, however, rejected the suggestion, and eventually she decided not to call Koonce at all.

 The trial court's ruling was proper. If evidence is otherwise relevant, the fact that it may tend to suggest other criminal activity by the defendant does not necessarily make it inadmissible, *Bracey v. United States*, 79 U.S.App.D.C. 23, 27–28, 142 F.2d 85, 89–90, *cert. denied*, 322 U.S. 762 (1944), although its admissibility may in some respects be limited. *See, e.g., Drew v. United States*, 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). In this case the government had a right to test the witness' memory by asking her why she remembered what appellant was wearing on December 7. *See United States v. Bussey*, 139 U.S.App.D.C. 268, 273, 432 F.2d 1330, 1335 (1970); *Hood v. United States*, 125 U.S.App.D.C. 16, 18, 365 F.2d 949, 951 (1966). The decision to allow such cross-examination is left to the

discretion of the trial judge,[6] who may permit it if its probative value is greater than its prejudicial effect. *See Brown v. United States*, 387 A.2d 728, 730 (D.C.1978); *United States v. Williamson*, 482 F.2d 508, 514 (5th Cir.1973). In this instance the probative value was substantial, since Koonce's ability to remember the details of appellant's alibi was an important part of the case. On the other hand, the prejudicial effect of the cross-examination, with the restrictions and stipulations suggested by the court, would not have been great. Accordingly, we find no abuse of discretion.[7]

### III

Appellant asserts that twelve instances of alleged misconduct by the trial court prejudiced his right to a fair trial. We need not consider most of these claims, since the acts of which appellant complains took place out of the jury's presence and could not have affected its verdict. *See, e.g., United States v. McCord*, 166 U.S.App.D.C. 1, 15, 509 F.2d 334, 348 (1974) (en banc), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed. 87 (1975). Nor does the record support the argument that the atmosphere of the trial was irreparably tainted by the court's actions,[8] or that defense counsel was "thrown off balance"[9] in the presentation of her case. Indeed, defense counsel, who is also counsel on appeal, acknowledged at oral argument that she was not unnerved or distracted by the trial court's conduct. In short, most of appellant's claims of judicial overreaching are

---

**6.** No claim is made here of any failure by the court to exercise its discretion, which would itself have been an abuse of discretion. *See Johnson v. United States*, 398 A.2d 354, 363–364 (D.C.1979). The court gave extended consideration to the issues raised by defense counsel. In a discussion extending over four pages of transcript, both the court and counsel explored possible solutions to the problem. Any suggestion that the court had prejudged the issue would not find support in the record.

**7.** The government urges us to base our decision on the principle announced in *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443

(1984). We decline to do so. Not only were the facts in *Luce* different from the facts here, but *Luce* was decided after this case was tried, so that we would have to grapple with difficult questions of retroactivity. We see no need to trouble ourselves with such matters, since we can decide the case on the merits without reference to *Luce*.

**8.** *Compare Petway v. United States*, 391 A.2d 798 (D.C.1978); *Williams v. United States*, 228 A.2d 846 (D.C.1967); *Peckham v. United States*, 93 U.S.App.D.C. 136, 210 F.2d 693 (1953).

**9.** *Womack v. United States*, 350 A.2d 381, 383 (D.C.1976).

unfounded and do not merit discussion. There were, however, two incidents which we find disturbing.

█ First, appellant contends that the trial court arrogated the prosecutorial function to itself by suggesting strategy and tactics to the prosecutor. In one instance this contention has merit. During his cross-examination of Allen Cunningham, the prosecutor asked about certain statements Cunningham had made when he entered his guilty plea. After the questioning had ended, the court asked the prosecutor whether he was impeaching the witness with a prior inconsistent statement or whether he was asking the witness to adopt the prior statement as the truth. After further discussion Cunningham resumed the stand, and the prosecutor asked him several more questions.

To the extent that the court sought to clarify the witness' testimony, appellant has no basis for complaint. *See, e.g., Khaalis v. United States*, 408 A.2d 313, 355 (D.C.1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980); *Womack v. United States, supra* note 9, 350 A.2d at 383. The court went further, however, and suggested to the prosecutor a tactical course which he had not considered.[10] This was improper. The trial court "must not take on the role of a partisan.... Prosecution and judgment are two separate functions in the administration of justice; they must not merge."

*United States v. Marzano*, 149 F.2d 923, 926 (2d Cir.1945), quoted in *Shannon v. United States*, 311 A.2d 501, 505 (D.C. 1973). Nevertheless, in light of the record as a whole, we see no reason to reverse the conviction on account of this incident. *See Greenhow v. United States*, 490 A.2d 1130, 1136–1137 (D.C.1985).[11]

█ Second, appellant contends that the court exceeded permissible bounds when it asked, immediately after defense counsel completed her cross-examination of Officer Pugliese, a series of leading questions which effectively rehabilitated Pugliese. Appellant argues that the error was compounded when the court refused, in the presence of the jury, to permit defense counsel to conduct any further cross-examination. The combination of the court's own questions and its barring of further questions by defense counsel troubles us greatly. We need not decide, however, whether these actions in combination constituted error, because if they did, the error was unquestionably harmless. Officer Pugliese's testimony related only to the December 9 distribution charge. Since the jury acquitted appellant of that charge, he could not possibly have been prejudiced by what the court did.

*Affirmed.*

FERREN, Associate Judge, dissenting:

I respectfully dissent from Part II of the court's opinion. I would reverse appel-

---

**10.** After the prosecutor had said, "I have no further questions," the court called counsel to the bench. The entire bench conference was as follows:

> THE COURT: You used the transcript from the plea of guilty and you never asked him if that was truthful testimony, leaving me in a very confused state of whether that is a prior inconsistent statement or he now adopts them [*sic* ] as truthful. During the trial you have to make a choice about what you are going to do.
>
> MR. SELLINGER [the prosecutor]: Otherwise I am restrained?
>
> THE COURT: Tactically I think you would ask him if he told the judge the truth and the things he read in the transcript were truthful, then they become testimony at this trial, and they are not prior inconsistent statements, but

you have to fish or cut bait. I am a little surprised.

> MR. SELLINGER: Okay.

The prosecutor then returned to counsel table and asked the witness a series of questions along the lines suggested by the court.

**11.** It is, of course, permissible for the court to suggest how counsel may proceed properly after an objection has been made, or to act *sua sponte* in order to avoid prejudicial error. *See Womack v. United States, supra* note 9, 350 A.2d at 382–383, and cases cited therein; ABA STANDARDS FOR CRIMINAL JUSTICE § 6–1.1(a), and Commentary at 6.7 (2d ed. 1980). What the trial court did here, however, was to offer unsolicited tactical advice to an able prosecutor who did not need it.

lant's conviction for distribution of dilaudid and remand for a new trial.

## I.

The principal issue is whether the government properly could have elicited "other crimes" evidence against appellant, softened by the protections the trial court's ruling would have afforded. Defense counsel proffered that appellant's alibi witness, his girlfriend Linda Koonce, would testify that appellant was wearing different clothing on the night of the crime from the clothing described by Officer Moroney. Counsel reasonably anticipated that the prosecutor would ask Koonce, on cross-examination, how she remembered what appellant was wearing. Counsel further anticipated that Koonce would reply she remembered because appellant had been released from jail the day before and had not changed his clothes overnight. Counsel accordingly sought a trial court ruling *in limine* to prohibit the prosecutor from asking Koonce how she remembered the clothing. Counsel reasoned that this question lacked probative value for the government but, by eliciting other crimes evidence, would be highly prejudicial to the defense. *Drew v. United States*, 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). Although neither the trial court nor the prosecutor doubted Koonce's proffered response, the court denied counsel's request. As a consequence, counsel made a tactical judgment not to have Koonce testify, reasoning on the basis of counsel's experience that other crimes evidence is devastating even if explicably innocuous, as in this case, by reference to dismissal of the charges for which appellant had been jailed.[1]

## II.

Before addressing the merits, we are obliged to resolve whether, by failing to call Koonce to testify for the defense, appellant waived the right to challenge the trial court's ruling. *See Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 463–64, 83 L.Ed.2d 443 (1984) (by not testifying at trial, defendant did not "preserve for review the claim of improper impeachment with a prior conviction," since on basis of trial court's *in limine* ruling it was conjectural whether court would have allowed the impeachment); *United States v. DiMatteo*, 759 F.2d 831, 832–33 (11th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 106 S.Ct. 172, 88 L.Ed.2d 143 (1985) (applies *Luce*'s rationale to foreclose review of *in limine* ruling allowing extrinsic evidence to impeach defense witness who did not testify).

Whatever our answer to that question would be if the trial took place today, I am satisfied that appellant has not waived his right to challenge the ruling in this case. Without doubt, the trial court's ruling caused defense counsel to withhold the witness. It was clear, moreover, how the trial court would have ruled if counsel had called Koonce as a witness and the prosecutor had begun to cross-examine; appellant's stay at the D.C. Jail would have come out, albeit with some restrictions. Thus, appellant's concerns were not conjectural. *Compare Luce*, 105 S.Ct. at 463.[2]

---

1. In *United States v. Bussey*, 139 U.S.App.D.C. 268, 273, 432 F.2d 1330, 1335 (1970), the court recognized the considerable unfairness of admitting evidence of a defendant's "alleged crime which had not been reduced to a final judgment."

2. *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 462, 83 L.Ed.2d 443 (1984), pertained to a conjectural trial court ruling, for it was unclear whether the defendant would have testified, *id.*, or how the defendant would have testified, *id.*, or, as a consequence, how the trial court would have exercised its discretion to admit or exclude prior convictions under Fed.R.Evid. 609(a). In the present case, however, but for the trial court's ruling, there is no doubt that appellant's alibi witness would have testified, and, given that ruling, there is little if any doubt that the other crimes evidence would have come out on cross-examination. Furthermore, *Luce* dealt with admissibility of a prior conviction that unquestionably would have had legitimate impeachment value, whereas in this case the other crimes evidence would have been illegitimately prejudicial. Thus, appellant had a much stronger reason for questioning the trial court's ruling than Luce did.

Moreover, precedent in this jurisdiction at the time of appellant's trial permitted a nontestifying defendant to challenge on appeal a trial court ruling that allegedly caused the defendant not to testify. *Johns v. United States,* 434 A.2d 463, 467–68 (D.C.1981); *United States v. Lipscomb,* 226 U.S.App.D.C. 312, 332–33, 702 F.2d 1049, 1069–70 (1983). By analogy, these cases also would permit the appeal of a ruling that demonstrably caused a defendant not to call a key witness. Thus, *Luce* —even if applicable[3]—represents a " 'clear break with the past,' " *Brodis v. United States,* 468 A.2d 1335, 1336, 1337 (D.C. 1983) (citing *United States v. Johnson,* 457 U.S. 537, 549 (1982) (quoting *Desist v. United States,* 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969)). Accordingly, I would hold that *Luce* applies prospectively, if at all, and thus does not bar this appeal of the *in limine* ruling on the other crimes issue. *Compare United States v. Givens,* 767 F.2d 574, 577–79 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985) *with United States v. Dunbar,* 767 F.2d 72, 74–75 (3d Cir.1985) *and DiMatteo,* 759 F.2d at 832–33.[4]

## III.

I turn to the merits. The witness' expected answer would not have helped the government discredit appellant's alibi; indeed, it would have added to Koonce's credibility by demonstrating a concrete basis for her recall. But the answer also would have severely prejudiced appellant by implying he had a criminal propensity. The obvious net result would have been to damage appellant with other crimes evidence which the government had no right to introduce. The only fair ruling, therefore, would have been to disallow the prosecutor's question on cross-examination, since it would have had no legitimate probative value for the government, only illegitimate value by prejudicing the defense. *See United States v. Bussey,* 139 U.S.App.D.C. 268, 272, 432 F.2d 1330, 1334 (1970) (reversible error for court to permit government's rebuttal witnesses not only to undermine alibi by placing appellant elsewhere but also to testify appellant was committing crime there); *cf. Brown v. United States,* 387 A.2d 728, 730–31 (D.C.1978) (error but not plain error when detective's references to "photographs" and "custody" "convey[ed] to the jury the impression" that appellant "had a criminal record").

The cases cited by the majority underscore the importance of a sound trial court ruling premised on the rule that other crimes evidence is presumed prejudicial and thus inadmissible unless it serves a "substantial, legitimate purpose." *Drew,* 118 U.S.App.D.C. at 15–16, 331 F.2d at 89–90. For the government to establish such a

---

3. *But see supra* note 2.

4. *United States v. Givens,* 767 F.2d 574, 577–79 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985), held that *Luce* should not apply retroactively where the defendant reasonably relied on Ninth Circuit precedent permitting appeal of an *in limine* ruling that prior convictions were admissible under Fed.R.Evid. 609. The record showed that the defendant would have testified but for the adverse ruling. It also contained the defendant's proffered testimony, which was sufficient to show the basis for the trial court's ruling.

In contrast, *United States v. Dunbar,* 767 F.2d 72, 74–75 (3d Cir.1985), applied *Luce* retroactively because the defendant could not reasonably rely on a weak Third Circuit precedent, in a footnote, suggesting unconditional review of *in limine* rulings on admissibility of prior convictions. *But see id.,* 767 F.2d at 76–78 (Adams, J., dissenting). Furthermore, the defendant in *Dunbar* was not certain to testify but for the trial court's adverse ruling; counsel merely said she was "considering" whether to call him as a witness. *Id.,* 767 F.2d at 75.

Finally, *United States v. DiMatteo,* 759 F.2d 831, 832–33 (11th Cir.) (per curiam), *cert. denied,* — U.S. —, 106 S.Ct. 172, 88 L.Ed.2d 304 (1985), merely applied *Luce* retroactively without analysis. An earlier opinion in the same case, however, made clear that there was no precedent in the Eleventh Circuit on which the defendant could have relied to appeal an adverse ruling *in limine* when he declined to call the witness whose impeachment with extrinsic evidence that ruling would have allowed. *United States v. DiMatteo,* 716 F.2d 1361, 1365 (11th Cir.1983).

purpose, usually one of the time-honored exceptions (irrelevant here) must apply, such as evidence of motive, identity, or common scheme. *Drew*, 118 U.S.App.D.C. at 16, 331 F.2d at 90; *Bracey v. United States*, 79 U.S.App.D.C. 23, 26, 142 F.2d 85, 88, *cert. denied*, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). Otherwise, there must be a clear showing that the probative value to the government outweighs the prejudicial impact on the defense. *Brown*, 387 A.2d at 730; *Bussey*, 139 U.S.App.D.C. at 272, 432 F.2d at 1334; *see United States v. Williamson*, 482 F.2d 508, 514 (5th Cir.1973).

Accordingly, unless the government can show a legitimate connection between the two crimes, the prosecutor must present the case-in-chief " 'with scrupulous care to avoid any intimation to the jury' " that a defendant had engaged in another crime "immediately before the one at issue." *Bussey*, 139 U.S.App.D.C. at 272, 432 F.2d at 1334; *Hood v. United States*, 125 U.S. App.D.C. 16, 18, 365 F.2d 949, 951 (1966).[5]

Once a defendant has presented his or her defense, however, the government may perceive a need to elicit testimony on cross-examination or in rebuttal that is likely to inject evidence of the defendant's other crimes. In fairness to the government, such testimony occasionally may be permitted to avoid a defense advantage, but only if the trial court soundly rules, after a proffer, that "the other crimes evidence [is] 'necessary' and therefore admissible despite its inflammatory content." *Bussey*, 139 U.S.App.D.C. at 273, 432 F.2d at 1335. Thus, cross-examination or rebuttal "evidence which incidentally reveals the commission of a crime other than the one named in the indictment may ... be received if it tends to defeat the defensive theory or rebut an issue raised by the

defense." *Bracey*, 79 U.S.App.D.C. at 28, 142 F.2d at 90 (footnote omitted).

For example, in *Hood*, 125 U.S.App.D.C. at 18, 365 F.2d at 951, the prosecutor properly elicited on cross-examination of an alibi witness that appellant had robbed that witness in the same neighborhood, several minutes before the crime at issue. The government is "free to develop any facts ... which tend[ ] to make [the testimony] unavailable as an alibi." *Id.* In contrast, in *Bussey*, 139 U.S.App.D.C. at 270, 272–73, 432 F.2d at 1332, 1334–35, the trial court abused its discretion by permitting the government to elicit testimony from rebuttal witnesses (who refuted an alibi supplied by appellant's girlfriend) that appellant not only was elsewhere shortly before the time of the charged offense but also was committing a crime there. The court noted that the reference to the earlier alleged crime was unnecessary to rebut the alibi. 139 U.S.App.D.C. at 272, 432 F.2d at 1334. The court added, however, that the situation might have been different if the government had properly limited the testimony on direct, then defense counsel, on cross-examination, had "cast doubt on the rebuttal witnesses' recollection," and then the government, on redirect, had asked the witnesses for particulars demonstrating why "they definitely remembered" where appellant was. 139 U.S.App.D.C. at 273, 432 F.2d at 1335.

In the present case, the alibi witness' anticipated reference, on cross-examination, to appellant's previous day in jail—a wholly collateral matter—in no way would have "tend[ed] to defeat the defensive theory or rebut an issue raised by the defense." *Bracey*, 79 U.S.App.D.C. at 28, 142 F.2d at 90 (footnote omitted). Appellant's previous day in jail was altogether irrelevant to his misidentification defense, except to help establish, not impeach, his witness' credibili-

---

**5.** This general proposition has a major exception that is irrelevant here: two criminal charges may be properly joined at trial when they are easily triable as separate offenses, even though evidence of one has no bearing on the other. *E.g., Cox v. United States*, 498 A.2d 231, 235 (D.C.1985). (Such a joinder is also permissible, of course, when the evidence of each crime would be admissible in a separate trial of the other, applying *Drew* criteria. *Cox*, 498 A.2d at 235.)

ty. *Compare Hood*, 125 U.S.App.D.C. at 18, 365 F.2d at 951. In short, the prosecutor's anticipated question would not even have been probative, let alone "necessary," for the government and thus should have been barred *in limine*, given the "inflammatory content" of the witness' proffered answer. *Bussey*, 139 U.S.App.D.C. at 273, 432 F.2d at 1335.[6]

Accordingly, I conclude—based exclusively on the cases cited by the majority—that the trial court erred in denying appellant's motion to exclude the prosecutor's anticipated question. Because the error caused appellant to withhold a key witness, it was of a magnitude requiring reversal—a clear abuse of discretion. *Johnson v. United States*, 398 A.2d 354, 363, 364 (D.C.1979).

---

**6.** If, as the trial progressed, the government could have clearly demonstrated a need to elicit the anticipated answer to discredit Koonce, then the prosecutor could have asked the court for permission to pin down why Koonce "definitely remembered" what appellant was wearing. *Bussey*, 139 U.S.App.D.C. at 273, 432 F.2d at 1335. But, on this record, the government has not shown why the question was "necessary." *Id.*