Paul C. **FOSTER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 89–CF–1185.

District of Columbia Court of Appeals.

Submitted Feb. 12, 1991.
Decided Dec. 30, 1992.

David Mehler, Washington, DC, appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Elizabeth Trosman, and Lynn Leibovitz, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before STEADMAN and WAGNER, Associate Judges, and REILLY, Senior Judge.

## ORDER

PER CURIAM.

 Appellant, claiming error in a trial court refusal to recuse, seeks resentencing, or at least consideration of his motion to reduce sentence,[1] before a different judge. In refusing to recuse, the trial court relied on two erroneous principles of law. First, it stated that the Code of Judicial Conduct had no binding effect, a proposition refuted by the *en banc* decision in *Scott v. United States*, 559 A.2d 745 (D.C.1989).[2] Second, it stated that movant had not complied with Super.Ct.Civ.R. 63–I, but that Rule, at least in that regard, relates to out-of-court conduct or utterances disclosing a personal prejudice against the moving party, not what the judge might have gleaned from proceedings before him or her, as here. *In re Bell*, 373 A.2d 232 (D.C.1977). Accordingly, the case is remanded for further consideration of the issue of recusal.[3]

REILLY, Senior Judge, dissenting:

The sole issue raised by this appeal is whether the conduct of a trial judge in two pretrial hearings in this case was such that the judge's final refusal to recuse herself from ruling on a motion to reduce sentence was a violation of Canon 3(c)(1) of the Code of Judicial Conduct, which provides in relevant part: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned." While the reasons given by the trial judge for denying appellant's first motion for recusal were based on erroneous assumptions, I discern nothing in the transcripts of the designated hearings which disclose "an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question the judge's impartiality."[1] In my opinion, the refusal of the judge to abstain from participation in any stage of these proceedings was not a breach of the code of judicial conduct. Hence, I disagree that an order remanding the case to the trial judge for further consideration of the recusal issue is necessary.

The first contact between appellant and Judge Queen, whose impartiality he now challenges, occurred on January 11, 1989, when he appeared before her on a motion to quash a bench warrant. He had been arrested several months before, charged with and later indicted for distribution of cocaine—a felony offense, D.C.Code § 33–541(a)(1). Appearing before Judge Taylor, he was released on his own recognizance and signed a notice requiring his presence at a status hearing on August 3, 1988. When he failed to appear, Judge Taylor issued a bench warrant for his arrest, revoked his release, and set bond. He was not taken into custody until January 10, 1989—five months after the warrant had been issued.

Brought before Judge Queen the next day, Mrs. Pullings, his newly appointed counsel,[2] moved to quash the warrant. The following colloquy transpired:

> MS. PULLINGS: We ask the court to quash the bench warrant. Mr. Foster failed to appear for arraignment.
>
> He tells me that he no longer lives at that address but he forgot to notify Pretrial Services of the address which he moved to. It was 2131 Rosedale Street, Southeast, Apartment No. 1. He said it

---

1. Super.Ct.Crim.R. 35(b).

2. The *Scott* decision had been decided *en banc* barely two weeks prior to the trial court's ruling and was not cited by either side.

3. As we read the record, the trial court as a result of these two misconceptions of applicable law and procedure did not squarely reach the issue of the alleged Canon violation discussed in Judge Reilly's dissent. *Cf. Johnson v. United States*, 398 A.2d 354, 365 (D.C.1979). Accordingly, we do not at this point mean in any way to intimate or take any position on that ultimate issue, nor on any procedural issues as to the extent or scope of available appellate review in the posture of this case.

1. *Scott v. United States*, 559 A.2d 745, 749 (D.C. 1989) (en banc).

2. Apparently, Daniel Mehler, appointed counsel at Foster's prior arraignment, was either unavailable that day or had not been notified of the warrant hearing.

just slipped his mind. And he does not want to keep coming back and forth, he says.

THE DEFENDANT: I know.

THE COURT: It slipped his mind?

THE DEFENDANT: Slipped my mind, but just that I was going through family problems. You know what I'm saying? Now my daughter is homeless now, I guess be going into a shelter while I'm in jail.

MS. PULLINGS: He also needs to be arraigned, I believe.

THE COURT: I have an arraignment date of July 12, 1988.

THE DEFENDANT: I got arraigned.

THE COURT: Plea of not guilty entered. Jury demand made. Judge Taylor continued the matter.

THE DEFENDANT: That's right.

THE COURT: Did you sign a notice to appear August 3, 1988, when the bench warrant issued?

THE DEFENDANT: Did I sign one?

THE COURT: Yes.

THE DEFENDANT: For August 3?

THE COURT: Yes, sir, to appear before Judge Taylor.

THE DEFENDANT: I probably did.

THE COURT: You didn't appear, that you know.

MS. PULLINGS: He said he probably did sign the notice.

THE COURT: Well, let us not have doubt. Is that your signature?

THE DEFENDANT: Yeah, that's my signature. I can see it from here.

THE COURT: So you knew you were due in court August 3, 1988, and it slipped your mind?

THE DEFENDANT: I wouldn't say it slipped my mind. I just didn't show up.

THE COURT: All right. That's fair.

We will continue this matter for status and we'll advise your counsel, Mr. Mehler, that you are again available to the Court. We will set it down for status on February 17. It appears to be a good day.

Quash the bench warrant and bond stands at $5,000 surety. Thank you.

Later that month, appellant Foster was indicted for violation of the Bail Act, D.C.Code § 23–1327 (1989 Repl.)—the non-appearance discussed in the warrant proceedings, *supra,* and on February 10, Judge Queen presided at a status hearing on the new charge. On this occasion, each side was represented by a different set of lawyers: Foster by David Mehler, appointed as defense counsel at the arraignment on the drug charge, and the government by Assistant United States Attorney Seabright.

The judge, noting Foster's presence, began by asking counsel whether discovery had been completed and if any demands on the goverrment were outstanding. Receiving a negative answer, the judge then asked if there were any statements by the defendant which were to be used against him. When the prosecutor said there were none, the following colloquy occurred:

THE COURT: Does that include the transcript of a hearing before this Court at which he said he didn't come because he didn't want to come, at the time of his arraignment?

MR. SEABRIGHT: I wasn't aware of that, Your Honor; but we would use that, although it wouldn't be an in-custody statement.

MR. MEHLER: Your Honor, I'm not familiar with that statement that the Court referred to. I don't know the circumstances of that statement; I don't know anything about that statement.

THE COURT: He came out on the bench warrant for a determination of bond and indicated—I indicated—I asked him was there something I should know; and he told me he didn't come because he didn't want to come.

MR. MEHLER: Well, Your Honor, I think that—with all respect, I don't think that was a proper question to be asked to a defendant who was not represented by counsel.

THE COURT: He was represented by counsel. I had an attorney standing right next to him, who nearly threw him to the floor and pulled his tongue out; but she restrained herself.

MR. MEHLER: Well, obviously, I don't know the circumstances. I was not present.

THE COURT: Then I suggest you order a transcript too.

MR. MEHLER: Well, then I'm sure there will be a motion to suppress any such statement.

THE COURT: Fine. Like I said, order a transcript.

Before adjourning, the court granted a government motion to consolidate both the bail and narcotic indictments for trial, setting a date of May 26, 1989. On March 10, 1989, appellant filed a motion requesting that Judge Queen recuse herself from the case and a motion to suppress the testimony he had given at the warrant hearing.[3] When the court convened on the trial date, it handed down a written order denying the recusal motion on the ground that the movant, by failing to file a supporting affidavit of "personal bias or prejudice," had not complied with Super.Ct.Civ.R. 63–I (applicable to the case pursuant to Super.Ct.Crim.R. 57). The order stated that defendant could not bypass the procedural rules of the court by citing the Canons of Judicial Ethics, as such canons are "not statutory enactments of this jurisdiction, nor a part of the rules of this court."

In so stating, the court erred in two respects: (1) Rule 63–I refers to out-of-court conduct or utterances disclosing a personal prejudice against the moving party, not what the judge might have gleaned from proceedings before him. *In re Bell*, 373 A.2d 232 (D.C.1977). Here, the movant's allegations were founded on the occurrences at two prior hearings before the same judge; (2) the court was mistaken in thinking the Canons of Judicial Ethics (now officially called the ABA Code of Judicial Conduct) as not binding upon it. The Joint Committee on Judicial Administration for this jurisdiction had adopted these canons on February 16, 1973, making them applicable to trial, as well as appellate proceedings in the District. *See In re Bell, id.* at 235,

and *Scott v. United States*, 559 A.2d 745 (D.C.1989) (en banc).

The question before us then is whether anything in the record of this case required Judge Queen to recuse herself from the sentencing proceedings or from considering the motion to reduce sentence on the ground that her "impartiality might reasonably be questioned" (Canon 3(c)(1), Code of Judicial Conduct). According to the government's brief, we should not reach this question at all because the defense had not expressed objection to the judge's participation in these phases of the proceedings.

The record shows that on the day the case was called for trial—the same day that the order denying the recusal motion was entered, the parties informed the court they had worked out a bargain under which appellant would plead guilty to attempted distribution of cocaine, a lesser-included offense to the one charged in the indictment, and that the government would dismiss the bail jumping charge. The court then conducted an inquiry to ascertain that in pleading guilty appellant understood his rights and was knowingly waiving them, and was aware of the maximum sentence and fine which might be imposed on him. Satisfied from appellant's answers that he was knowingly pleading guilty, the court accepted the plea, entered a finding to that effect, ordered a presentence investigation, and announced that sentencing would be deferred until July 19.

On that date after hearing allocution, the court sentenced appellant to a prison term of twenty months to five years. Commenting upon the presentence report, which disclosed that appellant had a record of repeated offenses in New York, including a conviction for rape, the court told him that it had decided that punishment was in order and sentenced him to a prison term of twenty months to five years.

Some forty days later, appellant's counsel filed a motion for reduction of sentence in which he repeated some of the arguments for leniency he had advanced at the

---

**3.** The record does not disclose what disposition, if any, was made of the suppression motion. It became unnecessary for the court to pass upon

it as the case never went to trial because of the plea bargain.

sentencing hearing. The final paragraph of such motion read:

> At the time of sentencing, the Court noted that Mr. Foster did not enter a plea of guilty until after his motion to recuse the judge in this case had been denied. Mr. Foster, through counsel, suggests that the sentencing court reconsider its actions in this case, including imposing a maximum sentence following a plea of guilty and also denying the recusal motion, and, if it sees fit, refer this Motion to Reduce Sentence to another judge for appropriate action.

Judge Queen denied this motion, stating that "the court is satisfied that the sentence imposed on July 19, 1989, is appropriate." The order made no reference to appellant's suggestion that his motion be referred to another judge.

The government's position, citing *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), is that by pleading guilty after the recusal motion had been denied, appellant relinquished any right to challenge on appeal the conduct of the judge in the pretrial proceedings. It also asserts the appeal was untimely, pointing out that the filing of the post-sentence motion did not toll the time for noting an appeal, as the thirty day period had by then expired. Hence, it argues that appellant is now procedurally barred from its challenge to the judge's impartiality predicated on Canon 3(c)(1) of the Code of Judicial Conduct.

This argument would carry considerable force were it not for *Belton v. United States*, 581 A.2d 1205 (D.C.1990). There, this court vacated and remanded a sentence because the trial judge at the sentencing proceedings disclosed that he had learned from conversations outside the courtroom that the defendant had a bad reputation. Rejecting the argument that the defense was foreclosed from arguing the issue of the judge's impartiality on appeal because it had failed to ask the judge to disqualify himself before pronouncing sentence, a ma-

jority (Schwelb, J., dissenting), held that it was unnecessary for the defense to have raised this point before the judge.

In the case before us, appellant at least did raise the recusal issue before the judge in timely fashion and adverted to it obliquely in his post-sentence motion. Accordingly, as we are bound by the holding in *Belton*, we must determine the merits of appellant's challenge to the refusal of the trial judge to withdraw from the case, notwithstanding the procedural defects to which the government has drawn our attention.

The wording of Canon 3(c)(1), requiring a judge to disqualify himself from a proceeding in which *"his impartiality might reasonably be questioned"* is a somewhat elusive concept. It has been equated with Justice Frankfurter's famous maxim "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). The interpretation of such terms as "reasonably questionable" or "appearance of justice" has created a series of conflicting decisions among appellate courts.

Our own court has been one of the most vigilant in holding trial judges to a rigid standard of impartial appearance. We have taken trial judges to task and occasionally reversed convictions where the judge, by engaging in extensive and sarcastic questioning of witnesses, providing unsolicited tactical advice to one side, or instructing a prosecutor to move for a contempt order, appears to have aligned himself to one party in the presentation of a case, *e.g.*, *Robinson v. United States*, 513 A.2d 218 (D.C.1986); *Haughton v. Byers*, 398 A.2d 18 (D.C.1979); *Shannon v. United States*, 311 A.2d 501 (D.C.1973) (*modified at* 319 A.2d 135 (D.C.1974)); and *In re Bell, supra*, 373 A.2d at 234.[4] We have gone to further lengths, however, in stressing the concept of "appearance" in contradistinction to actual unfairness. In one case, we held that a judge should have disqualified himself from sitting on a crimi-

---

**4.** This line of decisions contrasts markedly with the deference accorded trial judges by the federal appeals court for this jurisdiction. *See Mitch-* *ell v. Sirica*, 163 U.S.App.D.C. 373, 502 F.2d 375, *cert. denied*, 418 U.S. 955, 94 S.Ct. 3232, 41 L.Ed.2d 1177 (1974).

nal jury trial, even though there was no dispute about the fairness of his rulings, because he was in line for appointment to a supervisory position in the Department of Justice. *Scott v. United States*, 559 A.2d 745 (D.C.1989) (en banc). In another, we reversed a conviction where the judge had drawn the attention of the parties to official records of a municipal agency which belied the testimony of the defendant. *Davis v. United States*, 567 A.2d 36 (D.C. 1989).[5]

Accordingly, I turn to the transcript of testimony of the two trial hearings to ascertain whether judicial impartiality in this case is subject to reasonable question.

In assigning prejudicial error to the denial of the motion for recusal, appellant contends that the trial court took on the role of a prosecutor when it undertook to question him about the reasons for his failure to appear for the status hearing. He argues that because the court must have known that such failure would likely result in other criminal charges being leveled against him, "it decided to elicit statements from him that would serve as a basis for prosecution."

The transcript does not support such a partisan description of the presiding judge's conduct of the hearing. Appellant overlooks the posture of the case at that time. As appellant was before the court on a bench warrant for his arrest because of an apparent violation of the conditions of his release, the court was under a duty to decide whether or not to increase the bond, permit conditional release, or impose contempt sanctions. D.C.Code § 23–1329 (1989 Repl.). Thus, a factual inquiry was appropriate. *Campbell v. United States*, 295 A.2d 498 (D.C.1972). I perceive no hostility in the court's pursuing the matter of just why appellant had failed to appear after listening to the thread-bare excuse that the date had slipped his mind—scarcely an explanation providing the court with

any assurance that he would not be forgetful again of a scheduled appearance, if released. The court's question gave appellant an opportunity to furnish a more exculpatory reason. But instead of advancing some justification, appellant blurted out that he "just didn't show up." Far from reacting to this statement by imposing a contempt penalty—as the court could have done, *In re Wiggins*, 359 A.2d 579 (D.C. 1976)—it disposed of the matter by quashing the warrant and letting the bond stand. In short, nothing happened which indicated any predisposition on the court's part to trap appellant into an admission of guilt. *See Womack v. United States*, 350 A.2d 381 (D.C.1976) (holding that judge himself may propound series of questions to bring out necessary facts).

Appellant also faults the trial court for eliciting an incriminating admission by her question without warning him in advance that he had a right to remain silent. Assuming, without deciding, that even at a hearing where counsel is present, a court should advise the defendant of his *Miranda*[6] rights, in this instance, the failure of the court to give such advice did not prejudice appellant. His damaging admission went only to the issue of whether his nonappearance in court on the date of the status hearing was deliberate or excusable. But as the government subsequently dismissed the bail jumping indictment completely, his self-incriminating answer was never used against him. For similar reasons, we held that an objection on appeal to a line of seemingly partisan questions by the trial court was academic in view of the defendant's ultimate acquittal of the charge to which the questioning related. *Robinson v. United States*, 513 A.2d 218, 222 (D.C.1986). Hence, we need not decide whether the absence of *Miranda* warnings here constituted error.

Equally as groundless is appellant's further contention that the court compounded

5. The *Davis* opinion emphasized that the trial judge, without advance notice to the parties, had undertaken on his own an inquiry of the files of the Bureau of Motor Vehicles. Had the judge called the attention of the parties to the absence of evidence on a key issue and suggested that

they look up the records, a different result might have been reached.

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

its "impropriety" by drawing the attention of both parties at the pretrial hearing a month later to the statements appellant had made at the warrant hearing. We have held that it is proper for a judge to inform counsel in open court of some material in the case file which they may have overlooked in preparing for trial, even though the result of such disclosure furnished the government with data for impeaching testimony a defendant had given on direct examination. *Greenhow v. United States,* 490 A.2d 1130, 1336 (D.C.1985). *See also Perry v. United States,* 364 A.2d 617 n. 4 (D.C.1976) (where we found no impropriety in trial court's prompting prosecutor to produce evidence of chain of custody in drug case, saying the "trial judge need not remain silent while observing a patent omission which might vitiate a full adjudication of the defendant's guilt or innocence"). In the case before us, if the trial judge, although remembering what appellant had stated at the previous hearing, refrained from making both parties aware of it in advance of trial, she could well have created an ambush for the defense. Had appellant taken the stand at the bail jumping trial and given inconsistent testimony, the trial court would have been derelict in its duty if it failed to intervene, as it did in *Greenhow,* to thwart possible perjury.

In urging that challenged conduct of the judge revealed a disqualifying lack of impartiality, and therefore the case should be remanded for sentencing, appellant relies heavily on *Davis v. United States, supra,* 567 A.2d at 36, and *Scott v. United States, supra,* 559 A.2d at 745. Both cases are readily distinguishable. In *Davis,* the trial judge, suspecting that a defendant's disclaimer of ability to drive an automobile or any experience in operating such a vehicle was untrue, learned from an out-of-court inquiry to the Bureau of Motor Vehicles that the witness was the possessor of an operator's license. The judge relayed this information to the parties, thus enabling the prosecution to reopen cross-examination. Despite previous . cases indicating that a judge should not sit by passively if perjury was being committed, this court held that by undertaking an *ex parte* inves-

tigation of matters *dehors* the record, the court allowed the roles of neutral magistrate and prosecutor to become intertwined. Plainly no such *ex parte* investigation occurred here.

The challenge to the trial judge in *Scott, supra,* was also quite different. In holding that he should have recused himself from sitting in a criminal trial resulting in a conviction, our court concluded that even though his conduct of the trial was not flawed, his pending request for employment by the Department of Justice created a situation in which the appearance of impartiality as between government and defense might be questionable. In the instant case, there was no hint of any institutional tie to the prosecution.

In upholding the conduct of the trial judge in this case, I have felt it necessary not only to summarize this particular record at some length, but to analyze all key decisions of this court where the appearance of judicial impartiality has been drawn into issue. None of these decisions lends support to the thesis that a trial judge, by calling the attention of the parties to matters of record of which they were unaware, deviates in any respect from the high standards of objectivity required in this jurisdiction by the code of judicial conduct.